Before you start, I just want to talk about a matter of housekeeping, as I understand that you've divided your 30 minutes into 10 minutes apiece. That's correct, Your Honor. My experience is that never really works very well, so I hope that all of you have worked something out amongst yourselves. We want you to each have an opportunity to present your case. Correct, Your Honor. But I want you to know that we're not just going to keep going and going and going and going. So I hope you will be thoughtful of one another, recognize that others want to make their pitches well. Absolutely, Your Honor. Okay. And if you want to try to reserve time on your 10, please let me know. I will do that. Good morning, Your Honor. May it please the Court, Pierre Bergeron on behalf of Goodyear. I would like to reserve two minutes of time if I could, Your Honor. Two minutes? Okay. There's simply no clear and convincing evidence here to demonstrate that Goodyear acted in subjective bad faith necessary to support the imposition of inherent authority sanctions. Let me just stop you right there. Last night I reread Judge Silver's documentation. I don't think I've ever seen a more thorough recitation of facts in a contempt situation than what she did. She laid out in great detail with respect to each party the subject of this contempt action, lies, misrepresentations, failures to state, et cetera, et cetera, et cetera. At least speaking for myself, I respectfully suggest that if your argument is sufficiency of the evidence, you're not going to get very far with me. There may be some legal points that you may want to make that may have a great deal of impact on this, such as the ability to force Goodyear to post something in every case that it does in the future based on the contempt part. I mean, you argue your case the way you do. Sure. No, I appreciate that, Your Honor. You're not going to get very far with me with the sufficiency of the evidence. Let me be as specific as I can of an argument that I don't think has been quite covered by your client. Okay. Your client continues to say, well, where's the evidence? Where's the written evidence? But you had an in-house counsel who was responsible on behalf of Goodyear to check all of these documents. Now, there's no record, but people use telephones all the time. And the district judge said that there's sufficient corroborative evidence to show that this person who was in-house counsel was checking and, therefore, Goodyear was involved. And then you have the evidence of certain employees. Now, so there is some evidence. Now, why isn't that enough? Sure. So let me try to respond to the couple of threads there. I think there are some legal issues, and I'll get to those. But in response to your specific question, what was established, and it's undisputed, is that Goodyear collected the documents and went through an exhaustive process to collect those documents and immediately turned those over to counsel for counsel's review. I disagree with you. Which counsel? Coordinating counsel, Mr. Mussoff. What about Mr. Olson, the expert who testified? He was clearly under Goodyear's employment. Yes. Why? Well, I'd have to disagree with you, Your Honor. And I know what you said, but I just have to point this out. If you look at the testimony that Judge Silver relies on to state that he lied, she never addresses what he came back and said in his second deposition where he says, I thought we were just talking about the high-speed testing. So to say that the witness lied and then not to look at the witness's own clarification of that testimony, in his second deposition, is problematic. But this is the very thing that happened all along, isn't it, counsel? The plaintiffs, at a very early point, established that your folks knew collectively that they were talking about heat on these particular vehicles with these particular tires. And thereafter, everybody pretended you didn't know what the cause of action was, what the issue was, and so there was confusion and they were asking for too much. It was a pattern. So what you're telling me is that with respect to Mr. Olson, the same thing is going to fly, that the first time he says, well, gee, I don't know what you're talking about, and then the second time it's something else. But it had the effect of further delaying, further complicating, further muddying the waters, right? At least that, right? Well, I respectfully disagree with you on the Olson point. And the other point that she makes on Olson is that he knew of the heat rise test at the time of his deposition. And she points to a document. I think this is where you can look behind her factual findings. She points to a document. It's at ER 1243 and says this shows that he knew of the heat rise test. It doesn't mention that test at all, Your Honor. And that is, yes, Judge Silver made extensive findings. But if you look behind them, another example is Ms. Oki, the in-house counsel. She says she lies when she says that the Woods court ordered the production of all tests. Well, you know what? The plaintiffs in their statement of facts said the exact same thing, almost verbatim. And, Your Honor, that was at 1121 of the ER. So I don't understand how Ms. Oki saying something in an affidavit, which parallels almost verbatim what the plaintiffs say in their statement of facts, can be some perversion of justice or an attempt to mislead the court. And that's the kind of thing, and she has to go reach those actions because otherwise it's the conflation of attorney and client for purposes of holding Goodyear liable here. Could you go back to my question? Yes, Your Honor. My question was there was sufficient, I believe the district court could find there was sufficient evidence that the in-house counsel, Ms. Oki, had the responsibility of checking all of these documents before they went out. And I've read the record, and I think it would be difficult to say that she could not make that based upon the circumstantial evidence. Can she make that determination that there was, I know we don't have any materials in faxes and the rest of this, but wasn't that her responsibility? Well, Your Honor, this is where I think I'd also have to disagree. Of course you would. Tell me why. Well, exactly. Because in-house counsel is entitled to rely on outside counsel. That's why you hire lawyers. And I cannot tell you. Well, the Supreme Court said a little differently on that. But I'm not saying that she can't rely on them. What I'm saying is her duty was to check on them. And the evidence is sufficient, I think. And you tell me why I'm wrong. That before these documents went out, they went over her test for approval. Is that correct or incorrect? The discovery responses were given, the written discovery responses to the document requests were given to her for her review before they were sent out. The documents themselves were not. And I just have to say, Your Honors, I mean, in every case I've worked on where there has been discovery, I don't think I've had a single client say, okay, I want to look at every single document this team produced here. I mean, that's why people hire outside lawyers. And the burden, I mean, if you're going to impose a burden on the client to have to review every single document. I wish we could rely on what your experience has been, but we can't. We can't rely on my experience either. I was a trial lawyer. But what we have to rely on is whether the district court had sufficient circumstantial evidence that she did more than just toss papers back and forth, that she made decisions on behalf of Goodyear. If so, then she is Goodyear for that purpose. But it's not simply sufficient evidence. It has to be clear and convincing evidence. I think that that's significant here. And the only evidence in the record with respect to Ms. Oki is that she was not aware of the heat rise test until, I believe, it was 2010. So she was not specifically given this document. I mean, yes, the Goodyear engineers gathered these documents and transmitted them to counsel. I mean, that's how discovery works. But she wasn't asked to see every single document that came through. From your outside counsel, there was materials coming back, which are in the record, in which he makes a proposal as to how they handle things. And then he asked for her thoughts, your thoughts. He's asking for an opinion of the in-house counsel, right? Yes, it sounds like that, Your Honor. And doesn't that make her more than just a person who's passing papers back and forth? No, I'm not suggesting she's just a potted plant in the process. I mean, certainly she is a lawyer and has duties like any lawyer does. But I think from the process standpoint of how discovery works for a corporation where you have an in-house counsel managing an entire portfolio of litigation, you have to be able to rely on your lawyers to make judgment calls. Can I suggest something? You're with me a minute and ten seconds here. You may want to save something. But once you think about this, you've got not just this case that the judge saw, but these three other cases where Mazzocchi was also involved. You have a company policy about how you're going to deal with this. I'd be interested when you get up next time to talk about that, okay? Okay. Very well, Your Honor. Thank you. All right. Who's next? May it please the Court. My name is Mark Harrison. I'm a partner in the Phoenix law firm of Osborne and Maladon, and I represent the appellant, Basil Musnoff, who's in court today with me. With the Court's permission, I'd reserve two minutes for rebuttal. In the limited time available, I want to start by saying what's at stake in this case for my client is his career as a lawyer and his previously unblemished record as a competent, careful, ethical lawyer. In the limited time, I want to focus on two issues. First, can these sanctions be upheld in view of the fact that the district court failed to and disregarded the structure in place for resolving discovery disputes? The district court wholly failed to follow rules 26, 34, and 37. We know that there was no motion to compel. We know there was no meet and confer. We know there was no hearing on a motion to compel, and most important, there was no order issued by the district court giving the defendants any notice that certain documents were supposed to be produced. With respect, correct me if I'm wrong, but my understanding is this case was settled. Judge Silver thought that there was no problem. She consistently denied the plaintiff's motions of various kinds to get more information. She was stonewalled. Only after this case was settled and there was evidence, I think in newspapers or whatever, did the plaintiff come forward seeking to do something quite different. This is not the typical, you know, bag of beans case where you've got an ongoing piece of litigation. This one was done. There was simply evidence that was being brought forward to show, at least as Judge Silver found, that there was deceit and duplicity on the part of your client and others, and there was a lengthy hearing about the whole thing. They certainly had notice of that. There was certainly discussion about the amount of attorney fees, et cetera, et cetera. I'm not sure it's going to be helpful to talk about the rules you're talking about, which are really basically going to be factored into an ongoing trial. Your Honor, the fact of the matter is that this defendant and this counsel produced the documents which are at the heart of Judge Silver's order in other cases when, in fact, there was a motion to compel. If the plaintiff wanted these documents or felt that the defendant wasn't producing adequate documents, it could have easily met with the defendant and said, I'm not getting all the tests I want. Counsel, that could happen repeatedly, repeatedly, and your client and the other lawyer repeatedly told the court, at least according to the document, that everything had been produced, everything was wonderful. So, again, this is sophistry as far as I'm concerned to suggest that there was no desire to cooperate, that all your client needed was somebody to say, hey, let's give this a test. That's not what happened according to what Judge Silver's record showed. Well, regrettably, Judge Silver's record is not quite accurate in our view because plaintiff's counsel at status conferences indicated it had the documents it needed and, in point of fact, had never said it wanted documents that made any reference to heat as such. And, in point of fact, the defendants... This is significant. The judge said this is part of a conspiracy on the part of Goodyear to withhold these documents. And, in fact, they produced them in other cases without difficulty. I want to make one other point that's very central to this whole... Before you make that point, I don't quite understand your focus upon whether or not a motion to compel was brought. I read that in your brief and I've heard it here. Is there some way that your client is home free because they didn't bring a motion to compel? I don't get the connection. I'm sorry, Your Honor. In the brief and in your comments today, you continue to refer back that the plaintiff did not bring a motion to compel. Is there some law that I've overlooked that your client is free if they didn't bring a motion to compel? My client did what careful lawyers do. I understand your argument there. But tell me, is there a case that says that they have to bring a motion to compel or they can't go beyond that point to attack your client's actions? Well, there's a case in this circuit, Your Honor. Henry Rubin cited it in our brief, which makes it clear that you can't impose sanctions, draconian sanctions of this kind, without giving the affected party some warning. And in effect, you deny them due process if you do that. I understand, and my colleague said it, that there's been hearings and the rest of that. There's due process. My point, my question is very simple. Do you have a case that says unless the plaintiff brings a motion to compel, the plaintiff may not further attack the process in this case? I didn't hear the last part. I'm sorry, Your Honor. Is there a case that you have that says that the plaintiff must bring a motion to compel or he cannot continue this case? That is, you've mentioned the motion to compel. Well, I'm not sure I understand the question, but the law is clear that the suggestion that the sanction proceeding after the case was over somehow afforded my client due process and enabled him to avoid the sanctions that were imposed, quite frankly, ignores law in this circuit and other circuits that says before you impose sanctions, you've got to give somebody a chance to produce the documents or direct them that he's got to produce the documents. I'd like to make one other point. The case was over, over, done. Well, one could suggest that it was the plaintiff's fault for failing to move to produce. If the plaintiff didn't think that it had all the documents it needed, it's the one that determines whether this production has been sufficient, not the defendant. Do you agree that if the evidence shows that the plaintiff did all that it needed to do to ask for the documents in question, that then your client has had the due process necessary to put himself in sanctions' way? I think that, no, Your Honor, because I think this is the way the process works. I've been involved in hundreds of cases where I'm representing a client. I get requests. I evaluate those requests in light of what the plaintiff's defect theory is. There had been no explanation. The plaintiff said his case was predicated on weight and speed. Wait a minute. Wait a minute. Again, we're talking about what the judge found here, not what we found. She said that as of the time, I think it was the first set of interrogatories, that it was clear that there was a concern about heat, that it was clear what was being sought, and that there was thereafter the point at which sanctions were calculated thereafter. Now, you may not agree with her. I not only don't agree with her. But from her perspective, she thinks she has documented that everything that was needed to require your client to produce those tests about the heat was established at that point. What are we to look at other than what her record shows? In other words, what do you have in the record that will show that the judge, not only didn't have clear and convincing evidence, but simply had no evidence that you knew what was sought? Well, first of all, we evaluate requests based upon what the plaintiff says its theory of liability is. And the theory of liability articulated in the plaintiff's expert's report, which was issued in December of 2006, indicated that heat wasn't a factor. Load and speed was... And durability at highway speeds was... And so my client did what careful lawyers do. He produces documents that heat... And I've done this many times in 54 years of practice. I look at the plaintiff's theory of liability. I produce documents that I believe are responsive to that theory of liability. And if the plaintiff thinks that that production is insufficient, then the plaintiff asks me for more. And they do again and again and again in this case. But not with any specific reference to heat, Your Honor. That's not what the judge found. Do you want to save any of your time? I do, Your Honor, but I'd like to make one quick point before I sit down. Please, use your time. That is, the court also failed to apply the legal standards for the imposition of sanctions under the Miller case, which requires specific findings of causation. But the Miller case only involved a single instance of lying. Chapman, on the other hand, this BuzzFriend court case, involved a period of lying over a long period of time. I'd like you to be able to tell me the difference between Chapman and Miller when we talk again. I'll save my time, Your Honor. Okay, thank you. Let's hear from Mr. Jacobs, I guess, right? Yes, Your Honor, good morning. And I'm going to try to reserve three minutes if I may. Okay. Andrew Jacobs for Graham Hancock and Fenimore Craig. Your Honors, given the tenor of the discussion, I think it's appropriate to talk about legal issues and errors because de novo review is proper there, and I think that is really at the foundation of what we object to with respect to this order. Objections count under Rule 34. De novo on the legal points, right? Yes, Your Honor. That's why I'd like to address those first, please, because I think that's best in light of Your Honor's comments. Objections count under Rule 34. You are allowed to make, and the circuit has in reported decisions, sustained general objections to the production of things as overbroad when those objections are challenged. Plaintiff's lawyers said on December 20 in a writing, I'm going to challenge those with the court, and he never did that. Now, what Mr. Hancock thought, and he memorialized on December 5, 2006, was that the broad request for, quote, all tests, which I think most lawyers would say is overbroad, was then going to be refocused, and Mr. Kurtz properly refocused it, and he later served a request for high-speed tests, one of the four enumerated subtypes. So the proper function of Rule 34 is you get to make objections. They can be challenged. Mr. Kurtz did not challenge it. He propounded a request for high-speed, and absent an order under Rule 37 that Mr. Hancock or his client violated, the law of Rule 37 as set forth in circuit cases in our brief is that you're not supposed to be sanctioned. So the question becomes whether you leap over that and use inherent authority, and that's a really extraordinary thing to do because this circuit has taught, for example, in Yagman, that you're supposed to address discovery management during the case and not after the case with enormous after-the-fact sanctions. Let me ask you this, counsel. If I recall Judge Silver's analysis correctly, she did acknowledge that your client, she gave him the benefit of a doubt, that he probably did not know of certain things, particularly the fire and the heat test, until a certain point, but then I think she said it was like 22 months there. that he first corrected what he had previously told the court, and she was relying on that. What's your comment about that? Is there anything in the case law that suggests she cannot do that? Yes, Your Honor, because the heat rise test wasn't a high-speed suitability test, and this is six months after discovery. Mr. Hancock gets the June 5, 2008 email, six months after it's closed, and the email from Mr. Mosniff mentions that this test exists and has been produced, like Mr. Harrison said, in other cases. So what does Hancock do? He checks over and over again with coordinating counsel, and everyone at Goodyear, the engineers, the lawyers, Mr. Mosniff, they all say, all of Goodyear says that this test was not used for speed suitability, and that's what Judge Silver held and said in May 2007. It's in her order. That's what the tests are supposed to be, the speed suitability tests. If everyone at Goodyear says this isn't one, then it's not proper in the law to sanction in this vast way Mr. Hancock when he does the diligence Rule 26G says is a safe harbor, and, Your Honor, if I may, in August 22, 2006 hearing transcript, Mr. Kurtz correctly notes that if Mr. Hancock is making proper inquiries that the right people are looking at these things, that's the safe harbor, and that's our argument. It's Rule 26. Mr. Hancock, as local counsel, was diligent, and the law of bad faith, especially considering the draconian nature of the sanction, I think requires a searching and careful examination of these evidentiary bases. So, again, there is no case permitting Judge Silver, when discovery is over for six months, something that's not responsive to her orally stated description on May 17, 2007, speed suitability tests. This was not it. But, again, this case is like Yagman but more. I mean, in Yagman this court taught us that the discovery issues are supposed to be resolved in the middle of the case, and Chambers and Yagman stitched together very well. They emphasized the important value of deterring. This court wants to teach and lead and deter misconduct, and you do that during the case. Some of the things Judge Silver says are false. She says that, well, it was false when you made me feel like all the documents were produced before May 2007, but then in May 2007, why would there be a narrow request for high speed if all the tests had been produced? That doesn't make sense. Counsel, the third request for production of documents wasn't just limited to speed. It also involved endurance tests. So why weren't the tests that your client became aware of in June of 2008, why don't they fall under the endurance category? The 2008 tests, the high speed tests, and what they call the additional tests in the briefing, Your Honor, those tests were tests that were performed for different purposes by engineers at Goodyear, and Mr. Hancock at that point basically needs to rely on the advice of Mr. Musniff, and through Mr. Musniff, the scientists like Strobel and Taylor at Goodyear, and what did they use these things for? So Goodyear may have used these as sort of general background understanding tests, like the high speed test itself. It wasn't destructive. It wasn't to see when the tire blew up. It was run to a certain level, and then after it reached that equilibrium level, the test ended. So Mr. Hancock was not aware of more specifics about that. Let me ask you this. One of the things about this case that, of course, is very different is that the case is settled. I forget how long it was afterwards that the plaintiff's counsel approached the court. I don't know any case quite like this, frankly. Yes. So some of the precedents are a little strange. But I'd be interested in your thoughts on this. Judge Silver obviously felt that she personally, the court, had been misled. She went back. She looked at the record. Basically, she defeated almost everything that the plaintiff had asked for in discovery, relying heavily upon Goodyear and its counsel. You had a great case going for you, but then she felt, based upon the fact that you'd produced these other documents and other cases, that she had been deceived. And that's really what we're really dealing with here, is that she feels like she was sold a bill of goods. What I'm struggling with, frankly, is I recognize that your client and some of these other lawyers are very distinguished people who had very fine careers. On the other hand, we basically have an epidemic in many cases where the big guys are just beating up the little guys by sophistry. And I don't know whether this is one of them, but I'm really troubled by what happened here. And I would be very interested in your view as to what we do with the fact that the case itself has settled. Does that make any difference in our legal analysis as to how we treat these sanctions? You have placed your finger, Judge Smith, on why this case is unprecedented and why you would be making significant new law if you affirm it. All these sanctions cases say that, well, the inherent authority, even though you seldom exercise it, you carefully exercise it, you do so in a compensatory way. And everybody seems to grant that if you do it in a punitive way, there are all these procedures and proceedings that didn't happen here. That's the 1927 approach, right? Oh, it's the inherent authority in specific. That's the second part.  She cited both, I think, 1927 and 1927. Absolutely, Your Honor. So here's the thing that critically distinguishes this case from everything else before it. It's that you've seen the size of the settlement around ER 2610. It's a pretty big settlement. And so the plaintiffs at ER 567, they said, you know, we think you messed up discovery. You didn't disclose things. You were obstreperous. So they set all that stuff. The question isn't formal waiver. The point is the court knew they had this really large settlement and then lets them go back and double dip and have a proceeding based upon restarting from scratch and having a second go at the thing. And that duplication makes it inherently punitive and noncompensatory. There's no way with that size of settlement and this size of sanction that it's purely compensatory and not punitive. Let me ask you this. Let's assume that you're not successful in persuading us that there was no bad faith conduct. So there's something. Let's say it was if only the failure to produce the documents, the additional test in response to the third request for production of documents. What's the causation principle that you would have us adopt that would allow the court to impose some form of sanctions but not the entirety of the plaintiff's attorney's fees? It has to be narrowly tailored. I mean, this is the thing that in that Crow case, the Fifth Circuit case in 1988, you have to be extremely careful in exercising this vast and unbounded, powerful, inherent authority. To articulate the principle that you want the court to adopt. Yes, Judge. I think that it needs to be a causation that is proven by clear and convincing evidence to be the but-for cause of particular attorney's fees that emerge from that. It can't be some sort of Yagman-like everything in the case was bad. And that's what this is, no matter what one thinks of what's here. This is Yagman plus. Well, I mean, that's the question I put to you is the one I've struggled with because I tend to agree with you that the severity of the sanction seems to go beyond the misconduct that is revealed by the record. But I understand where Judge Silver was coming from because I don't know what's the alternative principle that we would adopt from a causation standpoint. May I reserve just a bit of time, Judge Wofford? Sure. Why don't you answer his question, and we'll leave you your 30 seconds when you get back. I'm not sure I have another answer yet besides my prior, but I'm going to think more. Wait, wait. No, go ahead and answer your question first. Okay, you don't have one. Okay, well, you have a question for him right now. Yeah, on my time. This is the bothersome part, and I understand the position your client was in. I've been there. But the part that's bothersome was the district court asked Mr. Hancock if there was, quote, any internal documentation that is available that has been requested that Goodyear has not provided, close quote. And then your client answers, we have responded to all outstanding discovery. Now, at that particular point, I'm not sure that that was a fair response. And then later on, she points out, the district judge points out, that the statement that had just recently been requested additional test was misleading because it implied that Hager had just only recently requested. Those were a mistake, those were true, or those were deceptive? Which? If I may take the second part first, please, Your Honor. As to the statement, they were recently requested. That is simply true and not misleading because they had had a negotiation for days, these gentlemen, and the further request was narrow, and that was the request that was made. And since there was an objection to the overbroad request, I think it is not deceptive or poorly taken for Mr. Hancock to say that, and there is no deception worked on the tribunal because he says it next to Mr. Kurtz, who gives his somewhat contrary view. No deception on the second part. Yeah, that has to do with people's minds of whether there's been a limitation. She has some problems with that, I guess, but go to the first one then. Yes, Your Honor, and I think that's the more important one. And when you look at the first point, it's revisited in the ER at 249 and 250, and that's where Judge Silver is conducting, as she often did in the hearing, direct examination of the lawyers, and she's examining Mr. Hancock. And she says, I look back at this. I see you said to me that you responded, not that there were no documents. I'm not saying it's perfect. I'm not going to stand here and say to you in this conversation we're having that that's perfect. What I'm saying is you don't end a man's career over that. A lawyer is trying to preserve privilege. He's trying to say something honest. We responded under Rule 34. That's what a response is. It's in the rule. And at the same time, he's saying something truthful and trying not to waive the privilege, which was secured previously. So I understand the question and the concern, Judge Wallace. I think that the rest of those transcripts, you look at them, the January and the October, don't in any way show anything that can be argued to be deception on his part, and I think the totality, therefore, is lacking. Okay. I'm going to give you that 30 seconds when you come back. I know it's going to be good. Okay. Let's hear from the appellees. May it please the Court, my name is John Egbert. I represent the appellees, the Hagers, in these consolidated appeals. I think it would be hard to imagine a busy district court judge spending more time and more effort in considering and carefully deciding a discovery sanction issue. The sanction proceedings for this case spanned a period of over two years from the time that the motion was first filed to the time that Judge Silver ultimately made her decision about how much the fees were going to be and against whom. During that process, there were 13 briefs or memoranda filed by this side of the room, five of them by Goodyear, four by each of the two groups of attorneys. There was an evidentiary hearing at which she gave them an opportunity to present their witnesses and their side of the story. Following that evidentiary hearing, she allowed additional discovery to address some of the issues that were raised, sometimes for the first time in this evidentiary hearing. And it seems like each time, at each level of the process, there were additional indicia of bad faith because of misrepresentations, new theories, new arguments that hadn't been asserted before. Ultimately, she issued a 66-page order detailing the analysis of all of it. And the analysis wasn't just there was bad faith. The analysis went through each step, each finding of fact, like a brick after brick building a foundation, bricks that have to be accepted by this court with great deference and less clearly erroneous. Let me ask you this, counsel. Am I wrong in thinking that what this really boils down to is that there were some additional tests that they simply failed to turn over? That's the long and the short of it. No, Your Honor. There's much, much more than that. Okay. That may have been the beginning point, and it may have been where it all started going bad, but when you have an evidentiary hearing to— I'm talking about just go back in time. Forget about the evidentiary hearing for now. Go back in time when the case was being litigated. The problem that arose during the litigation was that these additional tests existed that they knew about and that your clients should have received, right? That's correct. That's the hard thing. The long and the short of it. I just want to make sure you're not saying that that's the only example of bad faith that Judge Silver found and that the records support. Well, okay, what else? There's peripheral bad faith that's connected to that, but at the core that's the evil that occurred here in your view, or is there something more? That's all I want to know. No, I will agree at the core, Your Honor, but I just don't want to give up the other things because I think those are important because it shows the intent and the mindset at that core. Well, okay, but let me just return to the question I posed to one of your opponents. I guess assume that we are with you on that there was some bad faith misconduct here. I guess I'm having a hard time under our causation standard connecting the core failure to turn over some reports with therefore you get all of the fees that the plaintiffs in theory incurred for I don't know what the period was, several years. Yes, Your Honor. To the tune of millions of dollars. That just seems I have a hard time seeing how those two fit together. So I'd like to hear what you have to say on that. I'd be happy to address that because this really goes to I think somebody in another question compared this case to the situation where there's one instance where a document wasn't disclosed and there's a fight over that and it was found to be bad faith and then you get maybe whatever your cost of your filing the motion to compel and that's it. And that makes sense in that context, again, in an ongoing litigation. But here what happened here, Your Honor, was that because of this case was deprived of the very essence, the very heart of what drove this case was concealed intentionally over the whole period of time. It was kept. So what ended up happening was that this litigation for five years was a charade. It was meaningless. The whole thing was an empty endeavor. And that's what Judge Silver concluded, that because of this it was like a let's just do a law school hypothetical fictional exercise. That's what occurred here because the heart of what needed to be disclosed was not disclosed. It seems to me that there's a little more to it than that. Maybe this is part of my defense lawyer background, but I've never felt in representing my client, which was my responsibility, not representing the court, but my client, that if the other side didn't ask me for evidence, I was under no obligation unless the court enters an order to give up that evidence. There's no fairness. You know, there's an adversarial system that we deal with. Now, it seems to me that the problem I have with the case is at what point did the plaintiff's lawyer require that this evidence be? We found out about it because it was being properly requested in other cases, and now she's seen what happened in other cases, and she says, why wasn't this before? Well, it seems to me the question is, was it properly requested? And that seems to me to be the turning point. If it was properly requested and they held it back, I understand your case. But the question is, was it properly requested? It was, Your Honor. It was requested in multiple ways at different times. The initial request, the first request, was for all test records for the G159 tires, this tire that was involved in this accident, including but not limited to road tests, wheel tests, high-speed testing, and durability testing. These tests that were concealed fit within some of them, multiple of those clarifications, those classifications. So it was requested on the first occasion. Then it was also these tests fit within the third request as well. Counsel, just to make certain I understand, if I recall Judge Silver's order, she indicated that from the title of what I've called the first set, that there was communication from, I think, Mr. Hancock to Mr. Musnaf, I'm not sure I'm pronouncing that correctly. That's correct, Your Honor. Musnaf, detailing exactly what was requested and the conversations that had been had, and that it was clear, at least from her perspective, that all the tests, including the fire tests, were requested at that point. Am I correct about that? That is correct. Because if I understand it correctly, she bases her calculation of damages as everything that flowed from that point on, not before, but from that point on because she felt that there was a complete charade, that, in fact, the essence of what your client needed ultimately to settle the case, probably would have gotten a whole lot more money and had a lot less attorneys involved in the contingency fee situation, was just a game after that. Is that correct? That is correct. From November 1, when they supplemented their response to the first request forward, was the period for the sanction award. I think it's important that I finish Judge Wallace's answer because that's the critical point. Not only were they requested in those two different requests, but then in follow-up, they say that there was this alleged agreement that we're just going to flat-out withdraw or at least narrow that first request, which is, by the way, one of those excuses, those rationalizations that showed up late in the sanction proceeding. It was never mentioned when they first responded to the sanction motion, nor was it 14 months into the process. But they say that it was withdrawn. Well, within 15 days, on December 20, Mr. Kurtz is writing the letter again saying, you guys didn't give me any, you gave me no test. You did nothing. You gave me nothing that was responsive to my liability theory. Where is it? If you have it, you have an obligation to give it to us. That's in the record, the December 20 letter. So he's once again asking for it. Then they go to a hearing on January 1. We're in front of Judge Silver, and there's a representation on, I'm sorry, January 3, 2007. We have produced all the data we had as of the date of the accident. And we now know that they hadn't even started looking for the test at that point in time. And then on April 6, we've already alluded to some of this, Judge Silver says, is there any internal documentation that was requested that your clients haven't provided? Not only does it say we have responded to all outstanding discovery requests, and by the time this is being said, there is no third request. It's only the first request, which supposedly they had said was going to be withdrawn. Mr. Hancock doesn't say, Your Honor, we've responded, but they've agreed to withdraw. We're not going to give many documents until we see their third request. That's not what was said. He says we've responded, and, you know, if a document shows up, we'll, of course, produce it. So what's that saying to plaintiff's counsel? That there are no documents, and if they do find something, they're going to produce it. Then we march forward to May 17. Judge Silver again asking Mr. Hancock, Mr. Hancock, are there any tests that are available to show when this tire was tested for speeds above 30 miles per hour? By the way, high-speed test, 35 miles per hour, crown durability, 40 miles per hour. These are the tests that are being concealed, and she's specifically asking, are there any tests? And he says, well, Your Honor, that was requested of us just last week. And, by the way, Mr. Hancock then, after a little while later in that conversation, says, Your Honor, we requested this a long time ago. By the way, that must mean the first request, not the third request that had just been received the last week. So, again, Mr. Kurtz is saying, I didn't withdraw or narrow that first request, and so. Let me ask you, I'm sorry, your answer to Dr. Wallace's question. I want to hear your question. Thanks for a while. I guess I would have thought, put aside the statements you were just referencing at the hearing, but let's say that you propounded me a document request that's clearly overbroad. You're asking for tests on, you know, a whole range of tires that aren't even at issue in the lawsuit, and I meet your request with an objection that's overbroad and I don't produce anything, even though I have responsive documents. I have documents that meet the description with respect to this particular tire, but the problem is that your request is just ask for everything under the sun, and so I don't produce anything. I would have assumed that unless and until you bring a motion to compel, I'm perfectly entitled just to sit on the documents I've got, even though I know that they would be responsive to a properly framed request. Isn't that true? I think there's two responses to that, Your Honor. The first one is that if your original objection, again, these blanket objections that are, you know, page after page, I don't agree that that's proper. The overbreadth objection was properly taken because your client's initial request did not limit it to the particular tire that was issued, right? And then that was refined, and so there was an agreement that, hey, we're only talking about the size involved in this case. So that objection was addressed and refined. And when was that? That was right soon after the objections were made, and there was a discussion between Mr. Kurtz and counsel about that, and there was no disagreement that we weren't trying to get every size G-159. But then part of the problem is that if, in fact, as Judge Silver found, that these objections were made in bad faith as an overall effort to conceal these documents, not only in this case but in every G-159 case, if that's what the evidence shows, then, no, those objections, you can't stand by objections made in bad faith, even if you otherwise, you know, could say, well, we're going to stand on these and wait for a motion to compel. Do you have a case that says that the court is entitled to impose sanctions in that context even in the absence of a motion to compel? Yes. The Anheuser-Busch case was a situation where this court, well, the trial court, had awarded sanctions for two reasons, inherent authority, inherent power, and Rule 37. And the court analyzed it under rule, under inherent, this court analyzed it under inherent power, and said we're going to, it was proper. And therefore, we don't need to even get to whether all of the procedures under Rule 37, the motion to compel and all of that was satisfied. So that's an indication that if it's, if you can satisfy the inherent power, then that's okay. You don't have to, even when it's in the context of a motion or an objection to discovery, you don't have to go that route. But the difference is this, under Rule 37, only requires negligence. That's why there's this enhanced safeguards of saying you've got to have a motion to compel, you've got to have an order, then you have to have a violation of the order. There's no finding of bad faith there. There has to be a finding of bad faith here, and we're happy to accept that. There was bad faith here. Judge Silver found it, and her findings are not clearly erroneous. Let me ask you this. You can tell this is a case in which we've all struggled. This is unusual. But I'm impressed by the fact that in this case the case had settled. I've never seen one quite like it. We're dealing with a judge who finds out after the fact that these things have happened. She's laid out her view of what happened. You can argue whether it's clear and convincing evidence or what the level is. But just for discussion purposes, let's assume that there is clear and convincing evidence, as she has put it down. Let's talk about some law because I'd really like some help on this. You've got, first of all, the judge based upon both 1927 and inherent power. The judge has imposed $2.7 million of attorney fees and then a fallback position of $2 million and some change if there was a causation problem. This is an unusual case, again, because this was a contingency fee case. A lot of it is quite novel. You've got the case of Chambers, which is a U.S. Supreme Court case involving a lot of misconduct. You've got the case of Miller, which involved a single instance of misconduct. What, if anything, do those two cases teach us about the inherent limitations of or application of the court's inherent power to this case? One of the things that Chambers teaches us to begin with is that the court very clearly stated that just because misconduct is covered by a particular statute or rule, that doesn't mean that the court cannot use, rely on its inherent power to sanction that conduct. That's important here because this case is like Chambers where there are, again, to your point earlier, Judge, that while the core principle is that there was a refusal or concealment of critical documents, there are other instances of misconduct that don't fall within Rule 37. Following this up, 1927 seems to require causation. I think our cases are pretty clear about that. Is that also a requirement when the court's inherent powers are the basis of sanctions? And if so, on what do you rely? We would rely on both Chambers and Miller give indications of a requirement that there be some connection. Otherwise, I think, Your Honor, I think we would agree that you're then getting into simply a punitive situation that would require the higher levels. In this case, again, I'm not saying she's right or wrong, but Judge Silver, if you will, I think was offended for the court. She felt that she had been personally deceived, cheated, lied to by some otherwise very responsible members of the bar and a great American company. She has to decide what to do. She's really upset about it. She spends an enormous amount of time detailing the wrong she believes occurred. What limitation is there on this? Can she impose? Let's go to the second one. The Goodyear has to file, I guess, a copy of the orders, if I read it correctly, with every case involving this particular tire. Does she have that authority under inherent power? Well, we believe so, Your Honor, but we acknowledge that the case law is limited, but there does seem to be some authority out there that suggests that in the interest of not only compensating the victim here, the Hager family, but also in the interest of deterring that kind of conduct from going forward, preventing it. What about a foreign case? What if they're sued in France? Does it have to file it there? Again, the judge is the one that came up with the ruling, Your Honor, and it seems to fit within that. That seems to be the case. I guess what I'm struggling with is, again, just arguendo that she's laid a clear and convincing evidence basis for imposing sanctions. It seems like this is almost un-cabined, and our case law and Supreme Court certainly makes it clear. We have to be very careful about how the court imposes sanctions. It's just not a club that you can just beat people with. It really gets to the level almost of criminal if you get too far, and I'm struggling with the fact that we have very little case law on this thing. And I am too, Your Honor, and candidly I'm a bit torn in the process here because my client, the Hagers, they're not necessarily benefited in any way by whether or not Goodyear does that. They're done with their case, and so whether Goodyear has to go forward and continue to file in other cases is something that really doesn't matter all that much to my particular clients. I'm otherwise torn because I'm concerned, as an officer of the court, I'm concerned about our judicial system and whether this type of behavior is going to continue to happen in other instances. Where does the money go, by the way, if it's paid, $2.7 million? Who gets it? That's not in the record, Your Honor, but if you'd like me to address that outside the record, that's money that belongs to my client, and then there's a contingency aspect to it. Okay, it's in some court record related to this case. Is that correct? No, Your Honor, it's not in the court record. I don't believe that that arrangement is part of the record. To me, that's rather important. I'd appreciate it if all the parties who want to submit 28-J letters could help us a little bit on that because this deals, I think, in part with who are we benefiting? Is this going to the public taxpayers? Is it going to the state bar? Is it going to help indigent defendants? It's just a little sketchy in that regard. Your Honor, I would say to that point that the $2.7 million attorney fee award was a judgment to my clients, the Hagers, for having gone through this empty exercise. You think that the judgment is clear that it goes to your client? Yes, that's my understanding. I'm sorry, I didn't understand your question earlier. Maybe I didn't understand that. And, of course, this was a contingency fee case, so Mr. Kurtz got a percentage, which is what dropped probably 50%, right? Does he get half of that money? He gets a percentage. Again, the percentage, as I understand it, is not in the record. Counsel, can I ask you another causation-related question? So, I mean, if your clients are going to get all of the fees post-failure to comply with that first document production request, right, doesn't the causation theory have to be that had the documents, had these additional tests been produced on that day, basically Goodyear would have just thrown in the towel and settled? No, Your Honor, I think that was another way of looking at it that Judge Silver added to her order, but this is kind of like the Chambers case where the Supreme Court upheld, I think there the award was almost $1 million, $900-and-something thousand dollars of fees because of how severe and how pervasive the misconduct was in the Chambers case. But the case goes on for years afterwards, right? It does go on without the key evidence. Hang on, Counsel, hang on. The case goes on for years, and all sorts of fees are generated just as the case is prepared for trial, settles on the eve of trial. But what's the notion that if these documents had only been produced in a timely manner, none of those fees would have been incurred? Well, I think the more accurate way of looking at it, Your Honor, is that if those documents had been provided in a timely way, it would have been a real case. It would not have been a charade. So what does that have to do? See, that's my problem. What connection does that have with all of the fees incurred in the entire case being awarded to your client? There's no causal connection. Unless you can articulate some principle that gets us there. I think the principle is the same principle as the court found and affirmed in the Chambers case, and that is that when it goes so deep and just permeates every aspect of the litigation, it basically undermines it, undercuts it, and it's a nullity. It's not worth going through that exercise. There was no good purpose because it was so fundamentally flawed. Therefore, all of the time, all of the effort, all of the cost should be compensated for. That's what the majority opinion says. It says that it was within the court's discretion to vindicate itself, not the lawyers, not the parties, itself, and compensate NASSCO by requiring Chambers to pay for all attorney's fees. But it wasn't for the lawyers. It was for the court to be vindicated. But the attorney's fees went to the party. But it was, according to the Supreme Court, the purpose was to vindicate the court. So is there a causation requirement under Chambers, under inherent authority? Well, to that extent, if the portion that Judge Wallace just read, if there's a causation only in terms of vindicating the court in that aspect. If I understand the case correctly, they're saying that the sanction is to vindicate the court. You just have to have something, someplace to put the sanction, which is monetary. So they're giving it to the parties to cover their fees and whatever else. But I think that it's clear that under Chambers, the vindication is not of the parties. The vindication is of the court. That's what sanctions are for. I don't disagree. It's not going to the issue of who gets the money. The issue is, why are we doing it? We're doing it to vindicate the court. That's what Chambers says. But Chambers is a case, correct me if I'm wrong, where the nature of the misconduct was such that none of the litigation would ever have arisen if the misconduct hadn't occurred. And so there it does make sense to say, every dime that was spent litigating this stupid dispute is as opposable as a sanction. But that's what I'm saying. This is already a lawsuit that your clients had brought. They were in the middle of it when this misconduct arose. And so I just don't understand how you say, arbitrarily, everything going forward from this point, when these documents should have been turned over, that's compensation for the misconduct. You know what I'm saying? It's different from Chambers in that regard. It is distinct, Your Honor. I agree with you. However, I respectfully disagree that there isn't some rationale. It doesn't seem completely arbitrary to me that if you're going to so badly undercut and undermine that judicial process, my clients came in to have a trial on the facts, on reality, not on some made-up form of reality. And by doing that, that's what they got. That's all they got for their troubles. And that's not right. And whether it were vindicating the court or compensating my clients, I think the result ends up being the same, that all of those fees was not an abuse of discretion for Judge Silver to award all those fees. It's not arbitrary. In this particular case, Judge Silver said that she was relying both on 1927 and inherent power, so it could go either way. Could she have said, I am so angry that I've been lied to and this trial has been made a mockery that I'm going to compel that these fees be paid to the State Bar of Arizona to help with indigent defense? Would that have been permissible? I don't know, Your Honor. I don't know if that's permissible. I haven't researched that. I just can't give you an answer. When we... I think we're treading on some new law here. Aren't we enjoined by the Supreme Court to be cautious and careful in the use of the inherent power of the court? Yes, Your Honor. This court is, and Judge Silver was constrained, but I think Judge Silver was cautious and very careful and gave the other side every opportunity to address this issue. From your perspective, due process is not even close to being an issue here, right? I can't imagine more process being due, Your Honor. In conclusion, I would just say that we would ask the court to affirm Judge Silver's order, and I think that this is important for a number of reasons at a number of levels, not just to my client, but I think that if this effort is not enough for a district court judge to do in order to have a sanction award be affirmed, then there is no level that would be affirmed, and I think it sends the wrong message to our district court judges in terms of, because nobody's going to go through more effort, and certainly I think most aren't going to go to this level of effort. Let me ask you this. No offense intended to any of the counsel who are represented in this, but did the court refer anything to the State Bar of Arizona or Ohio or wherever the other Mr. Musnaf is counsel? Your Honor, I don't have direct knowledge of that, and perhaps other counsel can answer that for you, but it's my understanding that there is something pending in front of the Arizona Bar, but I don't know who or the details. That's, I think, a confidential process, and I don't have that information. I'm just trying to understand the scope of the remedies. You know, there are remedies, and there are remedies, and I just wanted to know whether that is the case. Absolutely. Thank you, Your Honor. Any questions by my colleagues? Thank you very much. So we have some rebuttals. Let's see. We're going to give you each a minute and a half to respond, okay? You just set the clock for each one. Let's see, counsel. Responding to a couple of the issues on causation that have been discussed, I think in response to your question, Judge Webford, if our view would be you look at Miller, which the court just said I'm not going to follow that because I think it's wrong. You look at Chambers, and if you look at our brief on fees, at page 20 of our opening brief and page, I believe, 11 of the reply brief, we set out the test. And it's not just Chambers in a vacuum. You then look at some of this court's subsequent authority, including the F.J. Hanshaw case, and the district court and the plaintiffs rely on Fox v. Vice, which is not an inherent authority case, but look at that because that's where the court said the Supreme Court said it has to be but-for. So if you have to go take depositions, because you're going to take them anyway, you can't get recovery for that. So that is the causation requirement that is imposed in inherent authority. Judge Silver said here, and I understand her trouble, was that it's impossible. You cannot apply a but-for test in this context where the case is over. And so that's why I've struggled to ask each of you, okay, so what is the alternative? Other than just saying, you know what, since we can't figure out the but-for equation, we just give them all the fees. But that's kind of what she did. I know, and I think that that's where you get into, you strain to the punitive aspect, which implicates criminal due process, to be honest. And your question about... How do you then... I don't know the answer to these questions, so I'm not asking whether you... I haven't made up my mind yet. But on this... The thing that struck me was what the Supreme Court has said that I read just earlier. It was within the court's discretion to vindicate itself and compensate NASCO by requiring chambers to pay for all attorney's fees. What am I missing that that doesn't cover the case here? I think it's the point that Judge Watford raised earlier, which is that case was founded on an absolute fraud. It's different than this case, where there were actions taken that the judge ultimately found to be improper. Why would that... Just why? Why would we cut it off there if there are findings that the judge makes that this is the way to do it? I don't know the answer to the question. Because the case would have still proceeded in this case. In chambers, the whole thing was, you know, for verification. So in this case, you would have still had a defense. Goodyear obviously disputes what the plaintiffs characterized these tests, so we could have defended that. So if you go to that level analysis, there is still legitimate defense here. And I think the judge even said, you know, maybe this would have settled on day one, but maybe it would have gone all the way to trial. Let me ask you another question. This is on my time, but I... Thank you. It'll be a little bit late for me to ask it tomorrow. I'm a little concerned about Goodyear's representation that once they hire outside counsel, there's some wall that's separated it. It's been made in the briefs, and you've made it here today. And what I have in mind is this Link case. I'm sorry, what did you say? Link, L-I-N-K. Oh, yes, Your Honor. Just Harlan's case. And on that, he says, Petitioner violently chose this attorney as his representative. It's a corporation. And he cannot now avoid the consequences, the acts or omissions of this freely selected agent. It seems that in this case opens up the question of whether it's accurate that just because Goodyear hires a lawyer who's outside the... that automatically they are foreclosed from anything he may do. Could you respond to that, please? Sure. So the difference between Link, and the district court relies on this, they don't try to defend it. And the reason is Link was not evaluating subjective bad faith. And what this court said in the Primus decision, which was subsequent, obviously, to Link, in the bad faith context, is the court said that sanctions must be based solely on the individual's conduct, not taking into account any other actor. So that is the subjective bad faith standard that this court applies. And the reason that Link is different is because it was not an attorney's fees for bad faith in derogation of the American rule. That's what Chambers explains as it looks at Link, and then we get to Primus in this court when it's talking about the individualized determination here. Okay. Let me ask you another question. You do get a chance to fully answer it, and it's something that's bothering me. All of us know that in cases like this, that people don't put everything in writing. So constantly we got the argument they didn't produce anything in the record. And you don't expect them to, if the district judge is correct. And even if they're not correct, you use telephones, you do other things. So the only way it seems to me that Goodyear can be tarred with what their outside counsel did is if they were involved, either by their employees or by their own in-house counsel. Now, tell me what the record shows as to her duties. I got the feeling from reading the opinion of Judge Silver, which I've done twice now, that she found sufficient circumstantial evidence that it was going on because things like, what are your thoughts and things like that, there was a communication going on, and that she felt that the in-house counsel had the responsibility on behalf of Goodyear to make decisions. What does the record actually show? Well, what's interesting in this case and what's unusual is the plaintiffs got to lift up the veil of the privilege and see behind it. I mean, they got her email communications between attorney and client. They got to depose Ms. Oakey. They got to question outside counsel. So if there was something there, some directive from Goodyear that says, go do something improper, they would have found it, Your Honor. But if they know there's something done improper and they approve handling the discovery in that way, is that sufficient? No, Your Honor. I think the only thing that Judge Silver specifically says with respect to Ms. Oakey is the point in her declaration, which is what I addressed earlier, where it says you're trying to mislead the court by saying that the Woods court compelled the production of all tests. And obviously, as I mentioned earlier, that's exactly what the plaintiffs say, so that's hardly our effort to mislead the court or to perpetrate a fraud on the court. So is there... If there's enough evidence of what's going on with the outside lawyers and she has the responsibility on behalf of Goodyear, let's assume that, what kind of circumstantial evidence can she rely upon that she knew what was going on and therefore Goodyear has to be into the mix? Well, I think that what I would say is you need clear and convincing evidence here, not circumstantial evidence. And the evidence that she pointed to... Yeah, yeah. What case do we rely on for that? So those were the cases. They were from... We cited them in our brief. They were from outside circuits. This circuit has not decided the clear and convincing standard. They've not cited a case to the contrary, and Judge Silver did apply the clear and convincing standard. Okay. So, but what she said was... Were those 1927 cases or inherent authority? They were inherent authority cases, Your Honor. Okay. What she said was that because Ms. Oki retained the final say... Yes. ...that was sufficient to basically collapse everything counsel did with Goodyear. And that's what I submit as problematic. I mean, we, you know, an in-house lawyer has to be able to rely on outside counsel. I mean, that's how the process works. And just because you have the final say doesn't mean you're omnipotent and know every single aspect of... Yes, but her assumption is that they were hiding the ball and they should have gotten it up. If she knew that they were hiding the ball, assuming the ball was hidden, if she knew it and on behalf of Goodyear, she says, yes, that's what we're going to do, then she's tied Goodyear in. Is there sufficient circumstantial evidence of that link? No, there's not, Your Honor. And why is that? There's not because we gave all the documents to counsel. I mean, the cases where the client gets sanctioned is where they don't give them the documents. Okay, but suppose they give them the documents because they have to for this other case, but they say, but don't give them in this case. And I would agree with you, that would be a problem, but there is not one indication of any circumstantial evidence or otherwise that anyone from Goodyear did that. But why... Ms. Okie is sent a draft of the response to the third request. That's correct, she is. And so why isn't Judge Silver entitled to find that Ms. Okie knew that there were additional tests that were responsive to that request which were not going to be turned over? Well, because I believe that the third request was asking for what is used for speed, for suitability for highway driving, the speed testing. And what the engineer said is, our only test for this is the high speed. But Taylor does not say that. He sends an email to Mr. Musnef in August of 2007 in the Woods case, which is a very similar document request. I would submit it's materially identical. And Taylor says these are the tests that need to be disclosed in response to that. So what he is responding to, Mr. Musnef drafted an email, and with respect to that test, at the bottom he said, this means we need to produce all tests. So that was his advice to Taylor. Taylor then says, here's all the tests. So I think, I mean, if you... And the judge kind of went through and parsed some of those emails, but I think a fair reading of that is counsel saying, produce all tests. So he says, okay, here they are. Not, okay, this is what each of these tests mean. And the testimony of the engineers has been consistent on this. And no one found that they have acted in bad faith with respect to the high-speed testing. Another question? Thank you very much for your rebuttal. We'll next hear from Mr. Harrison on behalf of Mr. Musnef. I want to go back to questions which both Judge Wallace and Judge Watford asked about the context in which this occurs. Having been a defense lawyer a good bit, I mean, I respond to requests. And those requests are then refined when I know more about what the plaintiff wants. And that's what happened here. The plaintiff expert report indicated that the plaintiff was relying on certain kinds of defects. The defense reacted to that. And as soon as they got the expert report, they directed a search for high-speed tests, which they didn't know existed until that point. Spent several months finding all of the W84 test results, which weren't even in paper form at that point. They were electronic records, and they turned them all over. They believed, in good faith, based on everything they'd been told by their engineers, that those were the tests that were responsive to the plaintiff's defect theory. And they may have been wrong. I got to just tell you, I'm looking at... I don't know which interrogatory response this is, but it said SDR 828. But that's where the plaintiff very clearly, early on, even before the first request for production of documents, says that our theory is that the excessive heat was generated when this tire was used for highway purposes. But that was... Your Honor, from the defense point of view, that was clearly affected by the expert report, which was issued quite some time after the first request. And as Judge Wallace said, if the plaintiff was dissatisfied with the W84 tests as being sufficiently responsive, they could have filed a motion to produce. Okay, but count... Maybe you can respond to your opponent's argument that in the inherent authority context, forget about 1927, if you interpose an objection in bad faith, which I submit this one was, to say that we didn't know what the plaintiff's defect theory was, you did, or your client did, that that can be a basis for inherent authority sanctions even without a motion to compel having been brought. The cases dealing with inherent authority, my understanding, all the cases I've read, make it very clear that you have to have some real intent, spoliation, multiple motions to compel. This was a legitimate attempt by the defense counsel to respond to the request that they understood. And if the plaintiff wasn't satisfied with it, they could have filed a motion to produce, and we wouldn't be here today. But the notion that somehow because they... At most, they made a mistake in deciding what was responsive, and this court has said, negligence doesn't rise to the standard necessary to find subjective bad faith. And quite frankly, it's troubling to me that Judge Silver rejected all of the evidence of record about my client's state of mind, Mr. Hancock's state of mind, both of whom said, we relied on the information we got from our client about what tests were responsive to the plaintiff's defect theory. They may have been wrong, they may have been mistaken, but to infer from that, and this court has said, we don't want to predicate sanctions of this magnitude on inferences... Counsel, I think your time is up, unless my colleagues have other questions. I'd like to have you respond to this. It's what Judge Silver, in my view, and Judge Silver actually brings the issue of the attorneys, and Goodyear, but especially the attorneys, viewed together, Goodyear and its counsel took positions in the other G159 cases directly contrary to the positions they now ask this court to accept. So she's going over to the other cases and saying that there's a difference of what they purported to do there and here. And then she says, the positions taken on these other cases, when Goodyear and counsel were not attempting to avoid sanctions, are reliable. As explained below, this means Goodyear, Mr. Hancock, Mr. Munson, knowingly concealed critical documents in the present litigation. It seems to me that's where she brings it all together. Now, it seems to me that on behalf of your client, you need to be able to tell us why that's wrong, why we can't accept that finding. Well, first of all, it's wrong as a matter of law because this court has said in a case, the Fluke case, that you can only resolve issues based on the conduct before you in this case. But leaving that aside, I would argue, Your Honor, that the fact that they turned over these documents in Woods and Shamo and Bogart indicates a lack of bad faith, a lack of subjective bad faith. They believed in those cases that they had requests that warranted the production of those documents. They got no such request in this case. And I don't know how you can, frankly, translate the plaintiff's failure to move to compel into my client's subjective bad faith. It just won't wash. As I say, if he was mistaken in retrospect, and after this opinion and so forth, that's one thing. But that's not a legitimate basis for the imposition of sanctions under the court's inherent power. And we would ask this court to reverse her man and vacate those sanctions. Thank you. Thank you very much. We'll hear from one more counsel here. Mr. Jacobs. Thanks, Your Honor. Going to Judge Watford's question a moment ago, I think this is critical. ER-770, the joint statement of discovery dispute that went to Judge Silver before the first of these discovery management conferences, Goodyear said in that statement the theory that you just said Judge Watford is bad faith. That's why this is nothing like Chambers v. Nasko. There's not a concealment being affected here. Goodyear is saying, look, we think until they really tell us, you know, in the expert opinion, a fuller design defect theory, we think this whole thing is a fishing expedition. Now, maybe that's wrong, but that's why the rules are drafted in 34 and 37 to afford a mechanism. And that's why Goodyear and Hancock didn't lie here, because they were showing Judge Silver, if it was a bogus, bad argument, Judge Silver had the opportunity then to correct it, like this court taught in Yagman was supposed to happen. And like Mr. Harrison just said, to make that subjective bad faith by clear and convincing after the fact is just a bridge too far. This case is nothing like Chambers. That was an extrinsic fraud on the court, people defeating jurisdictions, selling radio stations out from under TROs. This is a guy who didn't bring a motion to compel. That does not end two people's careers in American jurisprudence where there's a rule 34 and there's a rule 37. Please apply Yagman carefully in all the ways it matters to this case. Yagman talked about failure to consider opposing counsel's role. Opposing counsel can be an interruptive and but-for cause of what happened here in discovery. Judge Silver was angry. I get it. I understand it. But misunderstandings do not all have to count for six points. Misunderstandings do not all have to be everything. Misunderstandings should not end people's careers. It has to be clear and convincing, we hear a clear and convincing evidence of bad faith that is lacking here on this record, and if we look back in and say what Goodyear said out of everybody's presence in other cases matters and counts, Mr. Musniff's declaration said out of everyone's presence in the cone of privilege that they later discovered that the heat rise test was a compounder's test, and she found that was bad faith. But he said it in the private moment that she said mattered, and she disregarded that. Please follow Yagman. This is a very, very serious matter. Please reverse, Your Honors. That case just argued is submitted. We thank all counsel for their arguments. They've been very, very helpful, rest assured. Hopefully you can tell we have all read the materials. We are aware this is a very serious matter. We're aware of the impact of this case on counsel and on the plaintiffs, but it's a court of law, and we're going to do our very best to apply the law as we understand it, and the court is in recess for the day. All rise.
judges: Wallace, Smith, Watford